UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRUCE C. HUBBARD *et al.*,<br><br>     Plaintiffs,<br><br>     v.<br><br>JOHN E. POTTER,<br>POSTMASTER GENERAL,<br>UNITED STATES POSTAL SERVICE,<br><br>     Defendant. | Civil Action No. 03-1062 (RJL/JMF) |

## MEMORANDUM OPINION

Plaintiffs are five deaf employees of the United States Postal Service ("USPS") from various facilities across the country. Each plaintiff claims to have been denied a qualified sign language interpreter at safety meetings and mandatory work meetings and therefore claims not to have understood the information USPS was trying to convey. Plaintiffs also claim that USPS is failing to comply with its own written policy, which requires (at a minimum) that qualified sign language interpreters are provided at meetings to communicate with employees who can sign. Plaintiffs claim that defendant's refusal to provide the qualified sign language interpreters has prevented them from performing an essential function of their job--safety.

## DISCUSSION

This case was referred to me for the resolution of the pending discovery motions. Following is a brief discussion of the context in which discovery takes place in this

instance.

I.      Discovery in the Context of a Pre-Certification Class Action

Plaintiffs seek class certification pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. As a prerequisite to an action under either Rule 23(b) or (c) however, the following must be true: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, if the requirements of Rule 23(a) have been satisfied and either "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole" or "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," then class certification is appropriate. See Fed. R. Civ. P. 23(b)(2) and (3).

Discovery in the context of this pre-certification stage can be difficult to navigate:

> [While] [c]ourts often bifurcate discovery between certification issues and those related to the merits of the allegations . . . There is not always a bright line between the two. Courts have recognized that information about the nature of the claims on the merits and the proof that they require is important to deciding certification. [Thus,] [a]rbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes.

Manual for Complex Litigation (Fourth) § 21.14 (2004).

II.     The Pending Motions

In the case at bar, the court has determined that a bifurcation of discovery into two distinct periods is appropriate. See Scheduling Order of December 21, 2005 (RJL). The question then becomes how to provide the plaintiffs with the discovery they need without creating an undue and unnecessary burden on the defendants. As has been stated:

> Obviously, some discovery is necessary prior to a determination of class certification. National Organization for Women v. Sperry Rand Corp., 88 F.R.D. 272, 276 (D.Conn.1980); see also, East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 405-06, 97 S.Ct. 1891, 1897-98, 52 L.Ed.2d 453 (1977). However, the recognized need for pre-certification discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sound discretion of the court. National Organization for Women, 88 F.R.D. at 277; Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc., 586 F.2d 962, 966 (2d Cir.1978). The discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts present an undue burden to the defendant. National Organization for Women, 88 F.R.D. at 277. "Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification." Id.
>
> In managing discovery in cases of this nature, district courts are required to balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties. Shushan v. University of Colorado, 132 F.R.D. at 268.

Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 304-05 (D.Colo. 1998).

In this case, there are only the following six possibilities as to how individual postal facilities handled the problem presented by the attendance of a deaf employee at a safety meeting:  1) the facility ignores the deaf person who is left to shift for himself, 2) the facility hands out written materials without any consideration of whether the deaf

3

person can read and write, 3) the facility receives a request from a deaf person for accommodation and determines that written materials will suffice, 4) the facility receives a request from a deaf person for accommodation and determines that written materials will suffice but first ascertains that the deaf person can read and write, 5) the facility receives a request from a deaf person for accommodation and determines whether the deaf person can adequately lip read and concludes that he can and that no further accommodation is necessary, and 6) the facility receives a request from a deaf person for accommodation and without further inquiry provides an ASL interpreter for the meeting.

  The parties have agreed that there are 122 postal facilities that have 5 or more deaf employees and that discovery will be limited to these facilities. The more uniformity among the facilities, the more likely that the claim of any one deaf employee, such as the individual plaintiffs, is typical of the complaints of the class. The more variation among the facilities, the poorer that argument becomes. Thus, understanding how each facility deals with the possibilities I have posited is certainly a fit topic for discovery; indeed, as to the typicality factor, it is the heart of the matter.

  In my view, taking a Rule 30(b)(6) deposition is a particularly inefficient way to gather that information. Take an official in the Postal Service who could speak to whatever national policies they are that bear on the question. That person might speak confidently about what is required of each facility, but it would be impossible for her to state whether the facility in Detroit or Los Angeles complies with the policy. She could only say that she did not know and it would be an unfair burden to force her to educate herself as to all 122 facilities when there is a more efficient way to gather that information. That more efficient way is to seek the information from the facility itself as

to how it deals with the possibilities I have identified. But, in my view, demanding information from all 122 facilities is, at this stage of the case, unnecessary since the issue is one of typicality, not universality. A random sampling should suffice. To that end, I will ask the parties to put the 122 facilities in alphabetical order and then identify every fifth facility, yielding a total of 24 facilities. As to each facility, the most senior official in the facility will be required under oath to answer the following questions:

1. Does the facility hold safety meetings which all employees are either required or expected to attend?

2. Does the facility, independent of any request by an employee, have in place a procedure that should be followed so that deaf employees can learn what is discussed at the meeting?

3. What is that procedure, if one exists?

4. If written materials are distributed at the meeting, does the facility make a determination whether the deaf employees at the meeting can read the materials being distributed?

5. Is the official aware of any procedure that is now or was ever in place to ascertain whether deaf employees who will be attending any safety meeting can lip read with sufficient ability to understand what is being said at the meeting?

6. Is the official aware of any requests made in the last five years[1] by deaf employees for any form of accommodation so that they can understand what is being said at a safety meeting?

7. If the official is aware of such a request, what accommodation, if any, was

---

[1] I understand the parties differ at to the proper class period. Judge Leon will resolve that when he determines whether or not to certify the class. I have chosen five years as a reasonable period of time to use to assess typicality and the consequential scope of discovery.

5

provided to that employee?

8. What record, if any, was made of the request and its resolution?

9. Who made the decision to accommodate or refuse the request?

10. If there was such a request, does the official recall whether a sign language interpreter was provided to the deaf employees at the meeting?

In addition, each facility will be required to provide copies of the following:

1. Documents that relate or pertain to a policy or procedure adopted to accommodate deaf employees' attendance at any meetings.

2. Documents that relate or pertain to ascertaining whether deaf employees can lip read or to test their ability to read and write.

3. Documents that evidence requests by deaf employees for any form of accommodation so that they can understand what is said at a safety meeting.

4. Documents that evidence the response to such a request, whether accepted or denied.

5. Documents that evidence the retention or employment of a sign language interpreter at any safety meeting.

6. Complaints, formal or otherwise, by deaf employees pertaining in any way to safety meetings.

7. Documents that evidence the resolution of such complaints, whether formally or informally, to include settlement agreements between any deaf employee and the Postal Service.

The parties will be granted 60 days in which to complete the discovery. All other discovery of any type or kind will be prohibited during these 60 days. Once that period is

over, I will convene a status conference to determine what, if any, further discovery will be permitted.

      An Order accompanies this Memorandum Opinion.

                                            _____
                                            JOHN M. FACCIOLA

Dated:                                          UNITED STATES MAGISTRATE JDUGE