**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **BRUCE C. HUBBARD** *et al.*,<br><br>          **Plaintiffs,**<br><br>          **v.**<br><br>**JOHN E. POTTER,**<br>**POSTMASTER GENERAL,**<br>**UNITED STATES POSTAL SERVICE,**<br><br>          **Defendant.** |

**Civil Action No. 03-1062 (RJL/JMF)**

**MEMORANDUM OPINION**

This case was referred to me for resolution of all non-dispositive motions.

Currently pending and ready for resolution are the following two motions:  1) defendant's

Motion to End Pre-Certification Discovery and Memorandum of Points and Authorities

in Support Thereof ("Defs. Mot. re Discovery"), and 2) Defendant's Motion for Leave to

Designate a Rebuttal Expert and Serve that Expert's Report, and Memorandum of Points

and Authorities in Support Thereof ("Defs. Mot. re Expert").  For the reasons stated

below, the first motion will be granted in part and denied in part and the second motion

will be denied.

**BACKGROUND**

Plaintiffs are five deaf employees of the United States Postal Service ("USPS")

who work in various facilities across the country.  The gravamen of their complaint is

that they have been denied a qualified sign language interpreter at safety meetings and

mandatory work meetings.  Accordingly, plaintiffs claim that they have been prevented

from performing their duties safely, which they contend is an essential function of their job.

Plaintiffs are currently in the process of seeking class certification pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  To that end, on December 21, 2005, the Court bifurcated discovery into two distinct periods—pre and post-certification discovery.  Since then, and with the assistance of the Court, the parties have engaged in pre-certification discovery.  Although it should now be time for pre-certification discovery to end and for the case to proceed to resolution of the remaining issues, plaintiffs have raised legitimate concerns regarding the discovery that has been thus far produced by defendant.

## DISCUSSION

I.      Motion to End Pre-Certification Discovery

   A.      The Parties' Arguments

Defendant moves to end pre-certification discovery (save for the completion of expert witness depositions) on the grounds that ample time has passed and that plaintiffs should now have the discovery they need:

> Plaintiffs either (a) have the evidence they need for class certification and are attempting to collect that which they need for trial on the merits, or (b) have failed in their attempts to meet the class certification requirements following this Court's dismissal of their first class complaint and are trying to squeeze every last document out of the Postal Service in a vain attempt to piece together a plausible class certification theory for their second amended complaint.

Defs. Mot. re Discovery at 7.

Plaintiffs counter that, thus far, defendant's discovery responses have been

CASE 1:03-cv-01062-RJL   Document 122   Filed 01/03/08   Page 3 of 9

"grossly insufficient and manifestly incomplete." <u>Plaintiffs' Opposition to Defendant's Motion to End Pre-Certification Discovery</u> ("Plains. Opp.") at 1.  Plaintiffs also argue that 1) numerous documents produced by defendant in response to plaintiffs' discovery requests have been nevertheless characterized by defendant as "non-responsive," 2) certain facilities failed to provide documents for the full five years identified in the Court's order, and 3) certain facilities failed to produce any electronic documents. <u>Id.</u> at 6.

Plaintiffs therefore seek another round of discovery, a stage in the litigation that can only be described as "meta-discovery," i.e., discovery about the discovery.  First, plaintiffs want to take the depositions of 1) a subset of the senior officials who responded "regarding the process of preserving, locating, and producing documents responsive to the Court's February 22, order." Plains. Opp. at 12.  Second, plaintiffs want to take a Rule 30(b)(6) deposition regarding the Postal Service's "efforts to institute a document hold and preserve documents relevant to this litigation." <u>Id.</u>  According to plaintiffs, the paucity of the documents justifies the taking of additional 30(b)(6) depositions of another, or perhaps the same, subset of senior officials "regarding their facilities' reasonable accommodation practice and procedures." <u>Id.</u>  In other words, plaintiffs contend that the absence of documents suggests the appropriateness of requiring that the officials who originally submitted the surveys be deposed about how, if at all, their facilities are accommodating deaf employees.

B.    <u>Analysis</u>

1.    <u>The General Paucity of Documents</u>

Courts supervising discovery are often confronted by the claim that the

production made is so paltry that there must be more that has not been produced or that was destroyed.  Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end.  Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed.  See Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 313 (S.D.N.Y. 2003) (holding that additional discovery was mandated where plaintiff knew that defendant's production was insufficient because plaintiff herself produced numerous responsive documents).  Accord Peskoff v. Faber, 244 F.R.D. 54 (D.D.C. 2007) (holding that additional discovery of electronically stored communications was warranted where 1) plaintiff testified of his frequent use of e-mail as a means of communication, 2) there was in existence one such e-mail, and 3) the previous search produced curious results); Ameriwood Indus., Inc., v. Liberman, No. 06-CV-524, 2006 WL 3825291, at *3 (E.D. Mo. Dec. 27, 2006) (holding that plaintiff's production of a responsive e-mail justified the inference that other responsive e-mails existed).

According to plaintiffs, three inferences may be drawn from the alleged "paucity" of defendant's document production:  "First, facilities may possess additional responsive documents, but those documents have not yet been located or produced to plaintiffs. Second, facilities may have at one time possessed additional responsive documents, but those documents were lost or destroyed, and no longer exist.  Third, facilities may never have had additional responsive documents." Plains. Opp. at 7.  But, that there is a fourth and equally likely possibility that the designated officials kept the records they were

supposed to and turned them over to plaintiffs when asked to do so.  In other words, plaintiffs fail to account for the possibility that they may in fact have already received all responsive documents.

That the volume of documents produced by a particular facility "doesn't make sense" given the number of deaf employees working at that facility is not persuasive. While plaintiffs may have their own ideas about how many documents a particular facility should have produced, that is simply of no moment.  In order for the court to reason, as it must under <u>Zubulake</u> and similar cases, that additional discovery is warranted, the Court must have more to go by than a hunch on plaintiffs' part.

If I were at this point to order a supplemental submission from the Postal Service officials who responded and an explanation by them of how they conducted the search for the documents that I ordered produced, I would in essence be asking them to certify, for a second time, that which they have already certified.  Pursuant to Rule 26(g) of the Federal Rules of Civil Procedure, all productions must be accompanied by a signature:

> By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> **(A)** with respect to a disclosure, it is complete and correct as of the time it is made;

Fed. R. Civ. P. 26(g).

Plaintiffs provide me with nothing more than their speculation as a basis to believe that the attorneys for the defendant made an implicitly false certification in their collecting the results of the survey I ordered.

2.    The Production of "Non-Responsive" Documents

Plaintiffs' argument that additional discovery is warranted because on several

occasions defendant produced responsive documents yet maintained that they were non-responsive, is far more compelling.  For example, on page 8 of their opposition to defendant's motion, plaintiffs provide four examples of categories of documents that were turned over yet labeled "non-responsive."  According to plaintiffs, and the Court agrees, these documents were in fact responsive.  The first such category of documents identified by plaintiffs is documents produced by the St. Paul Post Office.  According to plaintiffs, this branch "produced 130 'non-responsive' supplemental pages containing multiple documents indicating payment for certified interpreters to attend safety, disciplinary, and other employee meetings between late 2004 and 2007." Plains. Opp. at 8.  Plaintiffs then argue, rightly so, that these documents are responsive to plaintiffs' request for production of "'[d]ocuments that evidence the retention or employment of a sign language interpreter at any safety meeting' and '[d]ocuments that relate or pertain to a policy or procedure adopted to accommodate deaf employees' attendance at any meetings.'" Id.  Clearly, documents such as bills or receipts for interpreter services at various meetings are evidence of defendant's policy regarding the treatment of their deaf employees and as such are relevant to this litigation and must be produced.  The fact that defendant failed to initially produce these documents, and in fact labeled them non-responsive when it did produce them, is certainly troubling and warrants further inquiry. Therefore, the court will set a date for an evidentiary hearing to take the testimony of Elisabeth Boyen, attorney for the United States Postal Service.  Thereafter, the court will determine if any supplemental production is warranted.

3.     The "Five Year" Period

My Memorandum Opinion[1] of February 22, 2007, contained ten interrogatories and seven requests for production of documents.  Questions one through four seek information about the current or present circumstances within the defendant's facilities. All were phrased in the present tense, e.g., "Does the facility hold safety meetings which all employees are either required or expected to attend." Order of February 22, 2007, at 5, 2007 WL 604949, at *3.  Question five seeks information about whether the official was aware of any procedure "that is now *or was ever* in place to ascertain whether deaf employees who will be attending any safety meeting can lip read with sufficient ability to understand what was being said at the meeting." Id. (emphasis added).  Thus, question five sought information about both current and past procedures.     Id.  Questions 6 to 10 then asked the official what he or she knows about any such past requests for accommodation.  Finally, I required the production of documents that I defined by specific nature or category, i.e., they had to relate to the request made in the past five years, as described in question 6.

In a footnote appearing above the word "years" in question six, I further indicated that I understood that the parties differed as to the class period but that Judge Leon would ultimately resolve that issue.  I added that, in the meanwhile, I had "chosen five years as a reasonable period of time to use to assess typicality and the consequential scope of discovery." Id.  While I might have been clearer, I intended that five year period to apply only to questions 5-10 and therefore to any requests for accommodation that had been made during that period.  I certainly did not intend to create a "five year discovery

---

[1] Hubbard v. Potter, 2007 WL 604949 (D.D.C. Feb. 22, 2007)

period"[2] for all ten of the questions in my Memorandum.

4.     <u>Electronic Documents</u>

Plaintiffs' last argument in favor of the taking of additional discovery, that defendant failed to produce all responsive electronic documents, like plaintiffs' first argument, lacks merit.  For example, although plaintiffs complain that many facilities provided very little by way of electronic documentation, plaintiffs concede that "[s]ome of the 25 covered facilities produced a significant volume of hard copies of electronic correspondence." Plains. Opp. at 9.  In addition, unlike the situation discussed above where, based on defendant's production of "non-responsive" documents, plaintiffs are able to point to the existence of additional responsive material, plaintiffs have no evidence that there exist additional responsive electronic documents.  Rather, as with plaintiffs' general argument regarding the paucity of documents, plaintiffs can point to nothing more than their own speculation that other electronic documents exist.  Thus, based solely on the fact that some electronic documents have already been produced, I cannot find on this record that the theoretical possibility that other electronic documents might exist justifies the additional discovery plaintiffs seek.  <u>See</u> Fed. R. Civ. P. 26(b)(2)(C)(iii).

II.    <u>Motion to Designate a Rebuttal Expert</u>

Defendant also moves the Court for permission to designate a rebuttal expert.  According to defendant, the designation of a rebuttal expert was necessitated by the filing of a second report by plaintiffs' expert:

> Indeed, Defendant would be prejudiced if not permitted to respond to Cokely's conclusions in his second report.  Moreover, failure to allow Defendant the opportunity to

---

[2] <u>See</u> Plains. Opp. at 1.

> present expert opinion and testimony responding to the new
> claims found in Cokely's second report will be a disservice
> to adjudication of this suit, essentially depriving the Court
> of valuable testimony.

Defs. Mot. re Expert at 4.

Unfortunately for defendant, this argument comes too late.  As noted by plaintiffs, pursuant to the scheduling order entered by Judge Leon on December 21, 2005, all expert designations were due on or before March 3, 2006, with rebuttal designations due on or before March 31, 2006.  At that point in time, defendant chose not to designate an expert witness.  It also chose not to designate a rebuttal expert witness.  On September 8, 2006, however, when plaintiffs' expert filed his supplemental report, defendant moved to strike, limit, or exclude the report on the grounds that it exceeded the subject matter of the first report.  In denying defendant's motion, the Court fashioned a practical solution to address defendant's concerns by allowing defendant to take a supplemental deposition of plaintiffs' expert.  Defendant has thus had ample opportunity to address the issues raised by plaintiffs' expert's supplemental report.  Defendant has identified no reason why the court should allow defendant to change its mind at this late date, when defendant was clearly given ample opportunity to 1) designate an expert witness, 2) designate a rebuttal expert, and 3) depose plaintiffs' expert on not one but two occasions, following the submission of both of plaintiffs' experts' reports.  Defendant's motion will therefore be denied.

An Order accompanies this Memorandum Opinion.

**SO ORDERED.**

_____/S/_____

JOHN M. FACCIOLA

Dated: January 3, 2008          UNITED STATES MAGISTRATE JUDGE