## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BRUCE HUBBARD, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 03-1062 (RJL)** |
| | ) | |
| **PATRICK R. DONAHOE, *Postmaster* *General, United States Postal Service,*** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION
(July **31**, 2013)

This is a Rehabilitation Act class action alleging that the United States Postal

Service ("USPS") failed to provide reasonable accommodations to current and former

deaf and hearing-impaired employees.  After a decade of litigation and negotiations, the

parties now seek final approval of a stipulated settlement agreement that would resolve

this action as to the Proposed Settlement Classes.  The Court held a fairness hearing

related to the settlement, as required by Federal Rule of Civil Procedure 23(e).  The

arguments and representations made on the record during the Fairness Hearing are hereby

expressly incorporated and made part of this Memorandum Opinion.  Having considered

the parties' pleadings, the arguments and representations made and the exhibits submitted

at the Fairness Hearing, the relevant statutes and caselaw, and the entire record herein,

the Court grants final approval of the $4.55 million Global Settlement Agreement

("Agreement") and awards class counsel $910,000 in attorneys' fees and $114,216.69 in

expenses from the total value of the settlement.

## BACKGROUND

This class action stems from two related actions brought before the United States Equal Employment Opportunity Commission ("EEOC").  In late 1998, Bruce Hubbard requested EEO counseling, alleging that USPS denied him reasonable accommodations at the USPS Brentwood facility in Washington, D.C.  *See* Third Am. Compl., Oct. 19, 2012 [Dkt #149] ¶ 19.  After a formal mediation in early 1999, Mr. Hubbard and USPS reached an agreement in principle that reasonable accommodations would be forthcoming.  *See id.*  Mr. Hubbard filed a subsequent EEO Complaint of Discrimination on or about February 20, 2001, again alleging that USPS denied him the reasonable accommodation of a sign language interpreter.  *Id.* ¶ 20.  The case proceeded in the EEOC Washington Field Office as EEOC No. 100-A1-8026X, Agency No. 1K-201-0037-99.  *Id.* ¶ 21.  On September 27, 2002, Mr. Hubbard amended his individual complaint to assert class allegations with four other plaintiffs, namely Judy M. Schuld, Grace J. Shirk-Emmons, Lucy I. Stieglitz, and George R. Westenberger (collectively, the "*Hubbard* Plaintiffs").  *Id.* ¶ 23.

On May 14, 2003, the *Hubbard* Plaintiffs filed this class action suit on behalf of themselves and similarly situated current and former USPS employees, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*.  *See* Compl., May 14, 2003 [Dkt. #1].  They later filed two amended class action complaints specifically alleging violation of § 501 of the Act.  *See* First Am. Compl., Aug. 22, 2005 [Dkt. #58]; Second Am. Compl., July 10, 2006 [Dkt. #90].  On October 24, 2011, the *Hubbard*

Plaintiffs sought leave to file a Third Amended Complaint to add James Gralund, Daniel Tighe, Susan Tighe, Diane Whitener, and Arlen Whitsit from *Tighe v. Potter*, EEOC No. 1E-801-0070-04 (collectively, the "*Tighe* Plaintiffs"), as well as Gail Walker, as named plaintiffs. *See* Pls.' Unopposed Mot., Oct. 24, 2011 [Dkt #140].

After litigating before the EEOC and this Court for approximately nine years, the *Hubbard* Plaintiffs and USPS entered settlement discussions under the mediation program sponsored by this Court in March 2009. *See* Pls.' Memo in Support of Unopposed Mot. [Dkt #140] at 5. The parties were unable to reach agreement at that time. *Id.* In March 2010, the *Hubbard* Plaintiffs, together with the *Tighe* Plaintiffs, reinitiated settlement discussions with USPS. *Id.* The parties engaged a private mediator for a flat success fee of $150,000—$75,000 to be paid by the Department of Justice ("DOJ") and $75,000 to be paid by Covington & Burling LLP ("Covington"). *See* Decl. of Kenneth R. Feinberg [Dkt. #154] ¶ 5. At the close of the mediation session in late 2010, the parties reached an agreement in principle, the terms of which the parties subsequently incorporated into the proposed Agreement. *See* Pls.' Memo in Support of Unopposed Mot. at 5.

In late 2011, plaintiffs filed an unopposed motion for preliminary approval of the proposed settlement. On October 19, 2012, the Court (1) granted plaintiffs' Motion for Leave to File a Third Amended Complaint, (2) certified the Proposed Settlement Classes, (3) appointed Class Representatives and Class Counsel, (4) granted preliminary approval of the Agreement, *except* for the proposed attorneys' fees and costs, (5) approved the

Class Notice, and (6) approved a schedule for the final settlement approval process. *See* Order, Oct. 19, 2012 [Dkt. #148]. Notices were subsequently mailed to over 6,000 potential class members.

Pursuant to Federal Rule of Civil Procedure 23(e), the Court held a fairness hearing to consider objections to the Agreement and whether to grant final approval. Due notice of the hearing was provided to all potential class members, and all entities that made timely objections were given an opportunity to present such objections to the Court and to be heard at the Fairness Hearing held on January 30, 2013. Two additional hearing days (February 15 and March 1, 2013) were devoted to objections to the injunctive and monetary relief proposed in the Agreement. A fourth hearing day, May 7, 2013, was devoted to the proposed attorneys' fees and costs.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23(e), final approval of the proposed settlement agreement lies within this Court's discretion. *See Vista Healthplan v. Warner Holdings Co. III*, 246 F.R.D. 349, 357 (D.D.C. 2007). "In considering whether to approve a proposed class action settlement, the Court must strike a balance between a rubber stamp approval and 'the detailed and thorough investigation that it would undertake if it were actually trying the case.'" *Id.* (quoting *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)). The Court's role is to act as a fiduciary for class members and determine whether the proposed settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Courts in our Circuit have considered the

following factors in making this determination: "(1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of Plaintiffs' case; (3) the stage of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Vista Healthplan*, 246 F.R.D. at 360; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (TFH), 2003 WL 22037741, *2 (D.D.C. June 16, 2003) ("*Lorazepam III*") (citing numerous cases).

While Rule 23(e) does not expressly address judicial oversight of fee accords, "the [district court's] approval function has routinely been extended to embrace fees . . . where . . . there is an inherent tension between the interests of the class and the interests of the lawyers." *See Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 523 (1st Cir. 1991); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (to minimize conflict between attorney and class, district court "must address the issue of attorneys' fees" before approving class action settlement). "The presence of an arms' length negotiated agreement among the parties weighs strongly in favor of approval, but such an agreement is not binding on the court." *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 884 (2d Cir. 1983) (upholding district court's downward revision of fee settlement in class action civil rights suit submitted to court for Rule 23(e) approval). "The court's role as the guarantor of fairness obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services." *Weinberger*, 925 F.2d at 525.

## ANALYSIS

### I.   Class Certification

As a preliminary matter, the Court will certify the Proposed Settlement Classes based on its finding that the classes satisfy the prerequisites of Federal Rule of Civil Procedure 23(a) with respect to numerosity, commonality, typicality, and adequacy, as well as the prerequisites of 23(b)(2) and (b)(3).  The Damages Settlement Class is certified as a Rule 23(b)(3) opt-out class comprised as stated in the Court's October 19, 2012 Order.  The Injunctive Settlement Class is certified as a Rule 23(b)(2) non-opt-out class comprised as stated in the same order.

"A settlement class certification must comply with all four prerequisites of Rule 23(a) and one of the three subsections of Rule 23(b)." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 387 (D.D.C. 2002) ("*Lorazepam II*").  Here, the numerosity requirement under 23(a)(1) is easily satisfied for both classes by the undisputed fact that USPS employed over 6,000 deaf or hearing-impaired individuals between November 14, 2001 and the present, and joinder of all members would be impracticable.  The commonality requirement under 23(a)(2) is satisfied for both classes because the claims are based on the common contention that USPS has failed to provide reasonable accommodations to deaf and hearing-impaired employees from November 14, 2001 to the present.  The resolution of this issue will affect all of the members of the classes. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) ("*Lorazepam I*").  The typicality requirement under 23(a)(3) is satisfied here

because the claims of the Class Representatives are based on the same course of conduct giving rise to the claims of the Proposed Settlement Classes. *See Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D.D.C. 2003). The adequacy requirement under 23(a)(4) is satisfied here because the Class Representatives and Class Counsel adequately represented the absent class members and there is no conflict between the interests of the Class Representatives and the Proposed Settlement Classes.

As noted above, plaintiffs seek to certify the Damages Settlement Class under Rule 23(b)(3) and the Injunctive Settlement Class under Rule 23(b)(2). The Court concludes that certification of the Damages Settlement Class under 23(b)(3) is appropriate. The predominance requirement under 23(b)(3) is satisfied because the predominant issue in the case—the question of USPS' denial of accommodations in violation of the Rehabilitation Act—"pertain[s] to each member of the class." *See Radosti v. Envision EMI, L.L.C.*, 717 F. Supp. 2d 37, 53 (D.D.C. 2010) ("*Radosti I*"). The superiority requirement under 23(b)(3) is also met here because the small individual stakes involved make the class action a superior mechanism to effect a nationwide change in USPS policies and "ensure[] that class members will receive equal treatment." *See id.* Certification of the Injunctive Settlement Class is appropriate under Rule 23(b)(2) because the injunctive and declaratory relief in the Agreement "is appropriate respecting the class as a whole," FED. R. CIV. P. 23(b)(2), to address the class-based discrimination alleged by plaintiffs, *see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## II.     Reasonableness of the Settlement

Having found that the classes should be certified, the Court now turns to consider the reasonableness of the settlement to determine if it should be approved.  For the reasons explained below, the Court considers the separate funds for class recovery and attorneys' fees collectively as a "constructive common fund," valued at $4,550,000.  The Court awards 20% of this fund, or $910,000, to Class Counsel as attorneys' fees.  The Court also awards $114,216.69 in expenses to Class Counsel.  This leaves $3,525,783.31 in monetary relief for distribution to the Class Representatives, class members, and claims administration costs.

The Court finds this recovery to be fair, adequate, and reasonable under Federal Rule of Civil Procedure 23(e) and the factors set forth in *Vista Healthplan*.  The settlement was reached in arm's length negotiations undertaken in good faith between experienced counsel after extensive discovery, factual investigation, and legal analysis. There is no evidence of unfairness or collusion that would preclude final approval.  Class counsel had more than "sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery." *See Lorazepam III*, 2003 WL 22037741, at *4.  These factors weigh in favor of approval.

### a.   *The Injunctive Relief and Compensatory Damages Are Fair, Reasonable, and Adequate*

The Agreement provides for injunctive relief, including state-of-the-art technology and improved management structures designed to enable all deaf and hearing-impaired USPS employees to fully and safely participate in the workplace.  *See* Pls.' Memo in

Support of Unopposed Mot. at 5–9. The Agreement requires USPS to make available American Sign Language ("ASL") interpreting services for important workplace communications including hiring, promotion, discipline, and safety discussions. *Id.* at 6. USPS will train supervisors on the new requirements and technology. *Id.* at 7. It will also create various internal management structures to monitor the provision of reasonable accommodations. *Id.* at 8–9. An independent ombudsman will also monitor compliance and enforcement of the Agreement. *Id.* at 9.

The Agreement also provides monetary relief to compensate eligible damages class members. Each Class Representative is entitled to a baseline award of $10,000 for his or her work on behalf of the class, and each eligible damages class member is entitled to a baseline award of $250. *See* Jt. Memorandum Providing Factual and Legal Support for Preliminary Approval of Global Settlement Agreement ("Jt. Memo") [Dkt. #142-1] at 5. All remaining funds (less claims administration costs) will be allocated to eligible class members based on the severity of the harm they allegedly suffered as a result of USPS' failure to provide reasonable accommodations. *Id.* at 6. The parties estimated that half of the approximately 6,000 eligible class members will submit a claim, and the average award will be $927. *Id.* at 7. The Court notes that this estimate is less than damages awards in EEOC actions, discrimination suits, and settlements based on similar allegations. *See id.* at 8–10. However, the Court's order today makes over $500,000 previously earmarked by the parties for attorneys' fees and expenses available for distribution to the class members. In addition, continued litigation in this case would

entail substantial costs and risks given USPS' continued denial of liability.  On balance, the Court concludes that a total recovery for the class of $3,525,783.31 (less claims administration costs) is fair, adequate, and reasonable.

The Court also finds reasonable the $110,000 in claims administration costs provided for in the Agreement.  First, these costs arose from a good-faith, competitive negotiation process.  The parties considered proposals from two different claims administration firms and ultimately negotiated an absolute cap on administration costs of $110,000 with one of them.  *Id.* at 25−26.  Second, this figure is consistent with the costs in other class action settlements approved by our Circuit.  *Id.* at 26.  Third, these costs are fair, adequate, and reasonable given the unique communication needs of the class.  *Id.*

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B).  In this case, the Class Notice was nationally disseminated to over 6,000 eligible damages class members (current and former hearing-impaired individuals who were USPS employees at some point after November 14, 2001) in November 2012.  The Notice—which was provided in both sign language and writing—advised the members of the Proposed Settlement Classes of the essential terms of the Agreement, the plan for allocating funds, how to make a claim, and how to object to the settlement.  *See* Pls.' Memo in Support of Unopposed Mot. at 19.  The Classes were also notified regarding the date, time, and place of the Fairness Hearing.  *Id.*  Having carefully examined the Notice and distribution

procedures outlined in Section 7.1 of the Agreement, the Court has no difficulty finding that the Notice was adequate.

The Court finds that the class members' reaction to this settlement has been positive and supports approval. Prior to the Fairness Hearing held on January 30, 2013, the Claims Administrator received 1,296 claim forms,[1] eleven requests for exclusion from the settlement, and nine submissions from class members.[2] *See* Jt. Response to Class Member Submissions Received to Date, Jan. 25, 2013 [Dkt. #152]. Compared to 6,000 notices disseminated to potential class members, "[t]he low number of opt outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members." *See Bynum v. District of Columbia*, 412 F. Supp. 2d. 73, 77 (D.D.C. 2006). In addition to reviewing these written submissions, the Court heard from five potential class members at the Fairness Hearing on January 30, 2013, namely: Timothy Ryan, Joseph Ortiz, Brian Bush, Marie Ryan, and Rastan Yazdani. Mr. and Mrs. Ryan, Mr. Ortiz, and Mr. Bush also appeared and spoke at the Fairness Hearing on February 15, 2013.

The Court overrules the objection submitted by Brian Bush. In his written submission, Mr. Bush challenged the $10,000 compensation for the Class Representatives. I conclude, however, that the Class Representatives are entitled to

---

[1] As of April 25, 2013, the Claims Administrator had received 1,495 claim forms, which represents 24% of the 6,159 class members. *See* Ex. A to Pls.' Supp. Br. [Dkt. #165-1].
[2] The Court received nine submissions from Jennifer Burks, Brian Bush, James Doolittle, Omar Chung, George Ciobanu, Arthur Gerada, Joseph Ortiz, Marie Ryan, and Timothy Ryan. The Court construes the submissions of Mr. Doolittle and Mr. Ortiz as requests to opt-out of the settlement pursuant to section 6.1.3 of the Agreement.

$10,000 each "for the services they provided and the risks they incurred during the course of the class action litigation." *Radosti v. Envision EMI, L.L.C.*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) ("*Radosti II*"). The eleven Class Representatives in this action spent hours working on behalf of absent class members and made valuable contributions to both classes. In addition, the amount of this award is reasonable compared to awards in other cases.

The Court also overrules the purported objections of Marie Ryan, Timothy Ryan, Jennifer Burks, Omar Chung, George Ciobanu, and Arthur Gerada. In their written submissions, Mr. and Mrs. Ryan expressed concerns about the provision of interpreter services during significant workplace events and problems with the Video Remote Interpreting technology. They also spoke about these concerns at the Fairness Hearing. While they did not appear at the Fairness Hearing, Jennifer Burks, Omar Chung, George Ciobanu, and Arthur Gerada expressed in writing similar concerns and frustration about past discrimination. The Court is confident that these concerns will be addressed when USPS implements the remedial aspects of the Agreement. In addition, the individuals who expressed frustration about past discrimination will be eligible for monetary awards under the Agreement.

Having scrutinized the terms of the Agreement, all papers filed in connection therewith, and the oral presentations of counsel and objectors at the Fairness Hearing, I find the injunctive and monetary relief to be in the best interests of the class and to be fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

### b. *Attorneys' Fees and Expenses*

As part of the Agreement, the parties negotiated a lump sum payment by USPS of $1,550,000 for fees and expenses to be allocated among Class Counsel. This amount was comprised of $1,360,783.31 in attorneys' fees and $189,216.69 in expenses. *See* Jt. Memo at 14. The $1,360,783.31 attorneys' fee component was comprised of $971,110.48 for Covington, $125,000 for the Washington Lawyer's Committee ("WLC"), $124,672.83 for a Maryland law firm—McCollum & Associates LLC ("McCollum"), and $140,000 for a Denver law firm—the Law Offices of Kevin C. Flesch LLP ("Flesch"). *Id.* at 15. The $189,216.69 expenses component was composed of $188,889.52 for Covington and $327.17 for McCollum. *Id.*

### i. *Attorneys' Fees*

"When awarding attorneys' fees, federal courts have a duty to ensure that claims for attorneys' fees are reasonable." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). Courts generally use two methods to assess the reasonableness of attorneys' fees: the lodestar method and the percentage of recovery method. *See In re Vitamins Antitrust Litig.*, Misc. Action No. 99–197 (TFH), 2001 WL 34312839, at *2–*3 (D.D.C. July 16, 2001) ("*Vitamins*"). The lodestar method is typically utilized in the statutory fee shifting framework, whereas the percentage of recovery method is employed where the efforts of counsel have generated a common fund. *See id.* "[T]his Circuit requires the percentage of recovery method in common fund cases." *Id.* at *2.

Under the lodestar method, the district court must start by determining the amount

of time reasonably expended by class counsel, and compensate that time at appropriate hourly rates based on the geographic region and the attorneys' experience level. *See Miller v. Holzman*, 575 F. Supp. 2d 2, 11–12 (D.D.C. 2008), *vacated in part on separate grounds by United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871 (D.C. Cir. 2010). The product of reasonable hours times a reasonable rate—the "lodestar figure"—is presumed to be the reasonable fee to which counsel is entitled. *Id.* at 11. Courts in our Circuit have reduced the lodestar, however, in cases where counsel's calculations are based on ambiguous time entries, block billing, and inefficient staffing. *See, e.g., Miller*, 575 F. Supp. 2d at 44.

Our Circuit has joined the Third and Eleventh Circuits, among others, in concluding that the percentage of recovery method is superior to the lodestar method for determining attorneys' fee awards in common fund cases. *See Swedish Hosp.*, 1 F.3d at 1271. The common fund doctrine is based on the equitable notion that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). As our Circuit has explained, "[s]pecial problems exist in assessing the reasonableness of fees in [common fund cases] since class members with low individual stakes in the outcome often do not file objections, and the defendant who contributed [to] the fund will usually have no interest in how the fund is divided between the plaintiffs and class counsel." *Swedish Hosp.*, 1 F.3d at 1265. By contrast, "statutory fee cases involve the plaintiff (not his attorney) as claimant and continue to be adversary proceedings." *See Skelton v. General Motors*, 860 F.2d 250,

14

253 (7th Cir. 1989).  In the common fund context, the percentage of recovery method

does a better job of guarding against potential abuses than the lodestar method.  *See*

*Swedish Hosp.*, 1 F.3d at 1269 ("[I]f we apply the lodestar method to the common fund

case, then the attorney inefficiently expending an excess amount of time does stand to

gain by that inefficiency if the awarding court does not ultimately recognize the

inefficiency in the far-from-exact testing of the fee award hearing."); Court Awarded

Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 246–49 (1986)

(noting that the lodestar method incentivizes attorney inefficiency and disincentivizes

early settlement in common fund cases).  In addition, the percentage of recovery method

is "more efficient, easier to administer, and more closely reflects the marketplace."  *See*

*Swedish Hosp.*, 1 F.3d at 1270.

        This, of course, is not a classic common fund case.  Class counsel and DOJ, on

behalf of USPS, negotiated a separate fee accord to be paid by USPS.  For all practical

purposes, however, the attorneys' fees and class recovery in this case come from the

same source—USPS revenues.  *See* Jt. Memo at 4.  Here, USPS, "unlike the loser in a

fee-shifting case, stands to lose no more if the attorneys' fee award is greater and

therefore cannot be relied upon to provide an adversarial approach to deleting

unreasonable time entries."  *See Swedish Hosp.*, 1 F.3d at 1269.  In order to guard against

potential abuses and ensure fairness to the class members in this situation, other judges

on this Court "ha[ve] previously considered similar settlement agreements as constructive

common funds and awarded fees on a percentage basis."  *See Radosti II*, 760 F. Supp. 2d

at 77 (Kollar-Kotelly, J.); *Vista Healthplan*, 246 F.R.D. at 364 (Kollar-Kotelly, J.); *Cohen*

*v. Chilcott*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007) (Kollar-Kotelly, J.); *Vitamins*, 2001

WL 34312839, at *6 (Hogan, C.J.).  Accordingly, this Court will similarly consider this

settlement to be a constructive common fund of $4,550,000, and the Court will apply the

percentage of recovery method to determine an appropriate fee award.

 Class Counsel here seeks an award of $1,360,783.31 in fees, which amounts to

just under 30% of the constructive common fund.  *See* Jt. Memo at 22.  In the absence of

any definitive test in our Circuit for determining the appropriate percentage under the

percentage of recovery method, my colleague, Judge Thomas F. Hogan, adopted and

applied the following factors from the Third Circuit:

> (1) the size of the fund created and the number of persons benefitted; (2)
> the presence or absence of substantial objections by members of the class to
> the settlement terms and/or fees requested by counsel; (3) the skill and
> efficiency of the attorneys involved; (4) the complexity and duration of the
> litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the
> case by plaintiffs' counsel; and (7) the awards in similar cases.

*Lorazepam III*, 2003 WL 22037741, at *8 (quotations and citations omitted).  In applying

these factors here, the most significant are the efficiency of the attorneys involved, the

complexity of the litigation, the risk of nonpayment, and the size of the fund.  While the

Court recognizes, and appreciates, that Class Counsel worked for over 10 years before

reaching an agreement that provides a reasonable and adequate recovery to the class

members, I am quite concerned that more than two dozen lawyers at three law firms and

a public interest organization billed over 9,000 hours to this case.  *See* Jt. Memo at 14.  I

am even more concerned that many of the billing records submitted to the Court contain

vague work descriptions from which the Court cannot ascertain the reasonableness of the time claimed.  Eleven attorneys at one firm alone—Covington—billed over 6,500 hours. *See* Decl. of Thomas S. Williamson, Jr. [Dkt. #165-1] ¶¶ 4, 11.  On balance, the Court finds that Class Counsel, particularly those at Covington, could have performed their duties much more efficiently, with leaner staffing and better team management and coordination.  Indeed, this is a classic example of a case where "too many attorneys [from too many firms] were assigned to discrete tasks," including multiple depositions where three or more attorneys billed time.  *See Miller*, 575 F. Supp. 2d at 40–41.  Moreover, the 9,000 hours spent litigating this matter were, to say the least, excessively disproportionate to the legal complexity of the case.  Only fifteen depositions (thirteen fact witnesses and one expert witness twice) were defended or taken by Class Counsel, and USPS filed only two dispositive motions.  *See* Ex. 7 to Decl. of Thomas S. Williamson, Jr. [Dkt. #165-1]. Furthermore, during the six years that this case was actively litigated, there were only a handful of brief hearings in the District Court and another handful before the Magistrate Judge assisting the Court with discovery issues.  "[T]he obvious lack of any market restraints on the amount of time spent causes the Court to be highly skeptical of counsel's claim that the number of hours is reasonable."  *See In re LivingSocial Mktg. & Sales Practice Litig.*, 2013 WL 1181489, at *19 (D.D.C. Mar. 22, 2013).  As to the risk of nonpayment factor, while the two smaller law firms that assisted Covington in the handling of this case did so on a contingency basis, Covington handled it on a purely *pro bono* basis and has assured the Court that it will donate all of the fees it recovers (less out-of-pocket expenses) to either public interest or legal services organizations.  *See*

Decl. Thomas S. Williamson, Jr. ¶ 3.  Finally, the minimum guaranteed and estimated

average monetary awards in this case fall short of those in other settlements based on

similar allegations.  *See* Jt. Memo at 10.  In sum, this is a relatively small common fund

from which to award nearly 30% to attorneys' fees.  In *Bates v. United States Parcel*

*Service*, Case No. C 99-2216 TEH (N.D. Cal.), for example, "[c]lass members who did

not participate in the litigation were due a minimum of $500—as compared to $250 in

this case."  *See* Jt. Memo at 10.

Accordingly, I have concluded that the *Lorazepram III* factors weigh in favor of a

more modest percentage award of 20% of the $4.55 million common fund, or $910,000,

to Class Counsel for attorneys' fees.  This percentage falls comfortably within the range

of fifteen to forty-five percent that has been established in other cases in our Circuit, and

it is a more reasonable and fair award than that proposed by Class Counsel.  *See*

*Vitamins*, 2001 WL 34312839, at \*10; *see also Swedish Hosp.*, 1 F.3d at 1272 ("[A]

majority of common fund class action fee awards fall between twenty and thirty

percent.").

### *ii.  Expenses*

"In addition to being entitled to reasonable attorneys' fees, class counsel in

common fund cases are also entitled to reasonable litigation expenses from that fund."

*Lorazepam III*, 2003 WL 22037741, at \*10 (quotations and citations omitted).  Here,

Class Counsel seeks reimbursement for $189,216.69 in expenses incurred during the

litigation.  *See* Jt. Memo at 14.  This amount is comprised of $188,889.52 in expenses

incurred by Covington and $327.17 in expenses incurred by McCollum. *Id.* at 15.

Part of the expenses sought here is Covington's half of the $150,000 flat success fee that Covington and DOJ committed to pay Ken Feinberg's law firm for its mediation services in the event that a final settlement were reached and approved by this Court. Such a fee might be appropriate, of course, in a highly complex case between two (or at least one) highly financed corporations, where there is a very large common fund for the settlement.  It is not, however, appropriate in a much less complex case against a financially strapped organization like USPS, where there is a very modest common fund. Indeed, counsel for DOJ and Covington acknowledged during the Court's hearing on this issue that they made very limited to no efforts to find a more cost-effective mediation arrangement after the Court's *pro bono* mediator was not successful.  Thus, while Mr. Feinberg may well be regarded as the gold standard in resolving highly complex matters involving very large pools of money (*see, e.g.,* BP Oil Spill Fund, September 11th Victim Compensation Fund, *Bowling v. Pfizer Heart Valve* Settlement) his flat fee demand in this case strikes this Court as unreasonable under these circumstances.  Accordingly, the Court will not approve the $75,000 portion of his fee that Covington seeks as expenses. If Covington, however, wishes to pay Mr. Feinberg from its portion of the attorneys' fees the Court has awarded Class Counsel, that is a matter between Covington and Mr. Feinberg.  In the meantime, the $75,000 Covington seeks will remain in the common fund for distribution to the class members.

Otherwise, the Court is satisfied that Class Counsel reasonably expended the

remaining fees claimed in the course of their work on behalf of the classes.  To date, no class members have objected to the award of expenses, and the award is not opposed by USPS.  Accordingly, the Court will award the remaining $114,216.69 in expenses to Class Counsel.

## CONCLUSION

For all of the foregoing reasons, the Court grants final approval of the Agreement under Federal Rule of Civil Procedure 23(e).  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge